IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TOURJOUS JACKSON o/b/o S.M.C.,  )<br>  )<br>   Plaintiff,  )<br>  )<br>v.  )<br>  )<br>MICHAEL J. ASTRUE, Commissioner  )<br>of Social Security,  )<br>  )<br>   Defendant.  ) | CIVIL ACTION NO. 3:08CV860-SRW<br>(WO) |

**MEMORANDUM OF OPINION**

Tourjous Jackson o/b/o S.M.C.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her daughter's application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be reversed and this action remanded to the Commissioner for further proceedings.

**BACKGROUND**

On May 16, 2005 (protective filing date), plaintiff filed an application for Supplemental Security Income (SSI), alleging disability since February 27, 2003 – her date of birth – on the basis of sickle cell disease (R. 52-56). On October 25, 2007, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing.

---

[1] The court refers to S.M.C. as the "plaintiff" in this memorandum of opinion.

The ALJ rendered a decision on March 5, 2008, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. On August 29, 2008, the Appeals Council denied plaintiff's request for review.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence."). The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." Shinn ex rel. Shinn v. Commissioner of Social Sec., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits." Id. (citing 20 C.F.R. §§ 416.924(a), (b)).

"The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" Id. (citing 42 U.S.C. §§ 416.924(a), (c)). "For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." Shinn, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).) This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.). As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories. See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").
> 
> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that

>child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79.

"Finally, even if the limitations resulting from a child's particular impairment are not comparable to those specified in the Listings, the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings. In making this determination, the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

>(i) Acquiring and using information;

>(ii) Attending and completing tasks;

>(iii) Interacting and relating with others;

>(iv) Moving about and manipulating objects;

>(v) Caring for [one]self; and

>(vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an

'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[2]

The ALJ determined that plaintiff has not engaged in substantial gainful activity and that she has the severe impairment of "hemoglobin sickle cell disease." (R. 23). He further found that she does not have an impairment or combination of impairments which meets or functionally equals the listings. (Id.). He concluded that plaintiff has "less than marked" limitations in the domains of moving about and manipulating objects (R. 39) and health and physical well-being (R. 31), and no limitations in the remaining four domains (R. 26-31). Accordingly, he concluded that plaintiff was not disabled, as defined in the Social Security Act, at any time since the application was filed. (R. 32).

## DISCUSSION

Plaintiff argues that she did not get a "full and fair hearing" because, in part, she was not represented at the hearing and the record does not clearly reflect a waiver of her right to representation. Whether plaintiff waived her right to representation affects this court's review of the Commissioner's decision because, if she did not, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . which requires the ALJ to 'scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts' and to be

---

[2] " A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

'especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited.'" Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997)(citations omitted).

On October 25, 2005, two years before the administrative hearing, the Commissioner sent plaintiff's mother a letter acknowledging her request for a hearing and advising her regarding her right to representation.  The letter explains the ways in which a representative could help her at the hearing, the fact that some private lawyers charge a fee only if she receives benefits, and the fact that some organizations might represent her free of charge. The letter indicates that a pamphlet entitled "Social Security and Your Right to Representation" and a list of groups that could assist in finding representation were enclosed.[3]  (R. 41-42). The month before the hearing, the ALJ sent plaintiff's mother a notice of hearing. It did not set forth complete information about plaintiff's right to representation, but did include a section entitled, "You May Choose To Have A Person Represent You," which stated, "If you want to have a representative, please get one right away.  You should show this notice to anyone you may appoint. You or that person should also call this office to give us his or her name, address, and telephone number."  (R. 36-37). At the hearing, the ALJ stated:

> It appears that the Claimant's not represented by an Attorney or other type of Representative but the mother has indicated – Ms. Cook has indicated that she understands her rights to representation and wishes to go forward with the hearing.  Do you have any questions about that?

(R. 283).  Plaintiff's mother asked only, "After you ask me any questions, is it okay if my

---

[3] The enclosures are not a part of the record.

mother comes in? She's kind of like the caregiver with her." (Id.). After responding in the affirmative, the ALJ stated, "Okay. Well, it's as if nothing else to be explained there so we'll proceed with the case then." (Id.).

The ALJ did not advise plaintiff's mother – on the record – regarding her right to representation, nor does the administrative transcript include an affirmative indication from the plaintiff's mother that she understood her right to representation. "Where a claimant has not been adequately informed of her statutory right [to representation], . . . her waiver is not 'knowingly and intelligently' made." Newberger v. Commissioner of Social Security Administration, 293 Fed. Appx. 710, 712 (11th Cir. 2008)(unpublished opinion). The transcript reveals that the ALJ and plaintiff's mother had an off-the-record discussion before the hearing about plaintiff's right to representation. Without any record of what, exactly, the ALJ told plaintiff's mother, how she responded to his statements, whether she described any attempts to obtain representation, and how the ALJ answered any questions she may have raised, the court cannot conclude that plaintiff knowingly and intelligently waived her right to representation at the hearing.[4]

Absent a record sufficient to support a finding that representation was waived, the ALJ has a "special duty," as noted above, to explore all of the relevant facts and to elicit

---

[4] The court does not here find that plaintiff did not waive her right to representation, but that the record is not sufficient to support a finding that she did. The written advice sent to plaintiff's mother two years before the hearing is not, standing alone, sufficient to demonstrate that she knowingly waived plaintiff's right to representation. See Brown v. Shalala, 44 F.3d 931, 935 n. 6 (11th Cir. 1995).

7

favorable, as well as unfavorable, facts. Graham, *supra*. If he failed to do so and that failure resulted in unfairness or prejudice to the plaintiff, this action must be remanded to the Commissioner. See Brown, 44 F.3d at 935 ("In evaluating the necessity for a remand, we are guided by 'whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice.'")(citations omitted).

Plaintiff contends that her condition meets the listing for sickle cell disease because of her "[r]ecent, recurrent, severe vaso-occlusive crises (musculoskeletal, vertebral, abdominal)[.]" (Plaintiff's brief, p. 9; 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 107.05(A)). The Commissioner responds as follows:

> In order to meet Listing 107.05(A), Plaintiff must demonstrate that she has had "recent, recurrent, severe vaso-occlusive crises." 20 C.F.R. pt. 404, subpt. P, app. 1, § 107.05(A). Vaso-occlusive crises are crises where "there is severe pain due to infarctions, which may be in the bones, joints, lungs, liver, spleen, kidney, eye, or central nervous system." *Dorland's Illustrated Medical Dictionary* 435 (30th ed. 2003); see also Shinn, 391 F.3d at 1277-78 ("Vaso-occlusive crises . . . are 'painful episode[s] in the life of a person affected with sickle cell anemia. . . . The limbs and joints are the most commonly affected parts, but the central nervous system, the lungs, and the abdomen may also be involved.'" (quoting 6 J.E. Schmidt, *Attorney's Dictionary of Medicine and Word Finder* V-40 (2002))). Her "[v]aso-occlusive . . . episodes should be documented by description of severity, frequency, and duration." *Id.* § 107.00(A).

(Commissioner's brief, pp. 9-10). The Commissioner further argues that plaintiff's medical records do not evidence the requisite pain crises. (Id.). However, while written documentation of pain crises is limited, plaintiff was also entitled to consideration of testimony regarding her pain symptoms.

In Shinn, *supra*, the claimant was a five-year-old child who had sickle cell disease.

The Eleventh Circuit held that testimony from the claimant's mother regarding apparent episodes of vaso-occlusive crises – for which the claimant was not hospitalized or treated at the hospital – was relevant and should have been considered by the ALJ on the issue of whether the claimant met Listing 107.05(A).  Shinn, 391 F.3d at 1282-87.  Here, the ALJ did not exclude the testimony of plaintiff's mother and grandmother.  However, a review of the hearing transcript reveals that the ALJ did not "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Plaintiff's mother and grandmother both testified about episodes for which they did not seek treatment at the hospital.  Although their testimony lacked detail, the ALJ did not ask questions designed to elicit further specific testimony about the pain episodes.  Plaintiff's mother testified as follows:

> Q. . . . If you could, then tell me is she walking?  Is she walking?
>
> A.  She – yeah, she's walking fine.  She just have a lot of problems with leg pains every – basically like every other week and I usually give her Tylenol for the pain and her legs are pretty warm when she has these pains.  I just give her Tylenol and give her rest and try not to always take her to the emergency room and after-hour clinic.
>
> Q.  How is her vision?

(R. 287).  A few minutes later, the ALJ returned to the topic of plaintiff's pain, but he elicited very little more detail:

> Q.  Do you feel that she has a good bit of pain to deal with?
>
> A.  I do.  I really do.  I just don't – like I said, I try not to – the oncologist told me if I could treat her at home with the pain, because that's basically what they're going to do, pain and push a lot of fluids, to just give her the Tylenol and then force fluids so every other – I'll say – like I said, every other week she complains of pains in her legs, mostly in her limbs.

Q. When did she start her pre-K program?

(R. 289). [5] The ALJ asked about plaintiff's school attendance record, and plaintiff's mother responded that her attendance was not good and that plaintiff has "had a lot of problems with fevers and pain." (R. 290). The ALJ did not question plaintiff's mother about the intensity of plaintiff's pain during these at-home episodes, nor did he ask her any questions about the duration of the episodes or how long she had been experiencing them at the rate of "every other week."

Thereafter, plaintiff's grandmother joined the hearing and testified as follows:

ALJ: Could you just tell us in your own words why you feel that [plaintiff] is disabled?

WTN 2: She's sick all the time. We have to take her to the doctor frequently. She doesn't sleep well. She complains of abdominal pain, frequently knee pain, and she just requires constant observation because sometimes she's real well and then she's into a fever state and we're having to go back and forth to the doctor, the emergency room, for treatments, shots and medication and so forth. She also have a lot of problem with endurance. She – her heart'll run real fast and then it'll slow down and she'll just fall right in the middle of the floor and say she's sick. And then after she rests for a little while, she's – she can play again but her endurance is real short.

ALJ: The pain she complains about is that usually in her legs, her knees?

WTN 2: Her legs, her knees, abdomen and then – and the last year she's been complaining of some headaches too. And she's had a lot of ear infections, about three. For the last couple of months, she's been sick for about almost through the whole month she's been out of school.

---

[5] In Shinn, as in the present case, plaintiff's caregiver – her mother – testified that her daughter's doctors had told her that, if she could control the pain and give her daughter fluids at home, she should do so. Shinn, 391 F.3d at 1286.

10

ALJ: All right. Well, let's talk with our Medical Expert then.

(R. 293). The ALJ asked no further questions of plaintiff's grandmother, and the medical expert, Dr. Durham, took the stand. (Id.). Dr. Durham testified that "based on the records that we have, which do not include any of what's been discussed this morning in recent months or even the recent two years for that matter but based on the records that we have, she does not meet or equal a listing of the Secretary. (R. 295).[6] He testified that plaintiff has less than marked limitations in the domains of moving about and manipulating objects and health and physical well-being, and no limitations in the remaining domains. (Id.).

In his decision, the ALJ concluded that "[t]he claimant does not have an impairment

---

[6] The hearing transcript does not list the exhibits considered by Dr. Durham. The ALJ did not identify all of the exhibits at the hearing:

ALJ: . . . Do you have any objection to what's in the file?

WTN 1: No.

ALJ: All right.

WTN 1: Well, I haven't had a chance to look at all of them but they seem to be in order.

ALJ: All right. Well, we'll go ahead and admit those into the record, those exhibits, and also the exhibits that you brought in today.

(Exhibits were received into evidence and made a part of the record thereof.)

(R. 282). Later in the hearing, the ALJ referenced Exhibits 7F, 5F, 6E, 1F and 12F (R. 285-87), so it appears that Dr. Dunham may have had access to the medical records at Exhibits 1F through 12F. Exhibit 2F – which is identified as an emergency outpatient record dated July 3, 2003 (nearly two years before the present application was filed) – is now missing from the record and there is no indication of whether it was among the records available to the medical expert. (R. 2, 4). The index to the administrative record reflects that Exhibits 13F through 18F were received subsequent to the hearing. (R. 5).

or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" He stated, "No treating or examining source or medical expert has so concluded. In addition, I have examined the record, and I find that the evidence does not support such a conclusion." (R. 23, Finding No. 4). The ALJ then turned to the issue of functional equivalence. The ALJ summarized the testimony of plaintiff's mother and grandmother as follows:

> The claimant's mother testified at the hearing that the claimant began Pre-K in 2007. She stated that the claimant walks, talks, and sees normally. She stated that she does not hear too well. She stated that she sleeps pretty well and is tired a lot. She stated that the claimant feeds herself but does not dress herself. She stated that she was treated at the hospital in August 2007. She reported the claimant's treating facility to be the Pediatric Clinic. She related the claimant's current medications to be Amoxicillin, Folic Acid, Reglan as needed, Miralax as need[ed], and Lactalose as needed. She stated that the claimant's heart beats real fast, and she was scheduled to be seen by a cardiologist on November 9, 2007. She stated that the claimant likes to play with toys. She reported that the claimant does not play outside a lot, because she gets tired easily.
>
> The claimant's grandmother testified that the claimant is sick all the time, has frequent abdominal and knee pain, requires frequent observation, and has little endurance. She stated that the claimant has had many pediatric visits.

(R. 23-24). The ALJ concluded that "the statements concerning the intensity, persistence and limiting effects of the claimants' symptoms are not entirely credible." (R. 24). The ALJ then summarized the documentary exhibits and Dr. Durham's testimony. (R. 24-26). He did not specify why he found the testimony to be "not entirely credible."[7]

---

[7] The ALJ did not explicitly state why he found the testimony of plaintiff's mother and grandmother to be less than fully credible. Instead, he simply summarized all of the evidence, leaving it to the court to attempt to discern which facts he found to impeach the testimony. It

By failing to further question the unrepresented plaintiff's mother and grandmother regarding the at-home pain episodes, the ALJ failed in his "special duty" to explore for all of the relevant facts and to elicit favorable, as well as unfavorable, facts. In view of the testimony of plaintiff's mother that plaintiff experienced pain episodes every other week,[8] the court further concludes that this failure has resulted in an "evidentiary gap" rendering the record insufficient for a reasoned decision on plaintiff's claim for benefits. Additionally, even as to the limited testimony offered by plaintiff's mother and grandmother, the ALJ erred by failing to clearly articulate his reasons for finding it to be not entirely credible.

## CONCLUSION

Upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be REVERSED, and this action REMANDED for further proceedings consistent with this memorandum opinion.

Done, this 13th day of April, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE

---

appears, from his later discussion regarding the domain of health and physical well-being, that he may have discredited the testimony because of the lack of documentation of hospital intervention for pain crises. However, the court may not speculate on the evidence that might have supported the ALJ's credibility determination; the ALJ is required to set forth his credibility analysis expressly in the decision. See Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

[8] The ALJ omitted this testimony in his summary of the evidence. (R. 23, 32).